522 S.E.2d 406

**David Edward HARTIGAN, III**

**v.**

**COMMONWEALTH of Virginia.**

**Record No. 1002–98–4.**

Court of Appeals of Virginia,
Alexandria.

Dec. 28, 1999.

244

Vanessa M. Antoun, Assistant Public Defender (Office of the Public Defender, on briefs), for appellant.

Thomas D. Bagwell, Senior Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON and ANNUNZIATA, JJ., and DUFF, Senior Judge.

BENTON, Judge.

A jury convicted David Edward Hartigan, III, of grand larceny. On appeal, Hartigan contends the trial judge erred in admitting evidence that impermissibly commented on Hartigan's exercise of his constitutional privilege against self-incrimination. He also contends that after the Commonwealth introduced in the sentencing proceeding evidence of his prior convictions, including the sentences for which he was parole eligible, the trial judge erred in refusing to instruct the jury that parole has been abolished. For the reasons that follow, we reverse the conviction and remand for a new trial.

I.

A sales clerk in the electronics section of K–Mart Department Store testified that, when he was busy serving three or four other customers, Hartigan asked about the location of a particular videotape. After he directed Hartigan to the videotapes, Hartigan removed several of the videotapes from the display case and held them while the sales clerk assisted the other customers. After waiting five to seven minutes, Hartigan walked away pushing a shopping cart containing a trash can. Upon realizing that Hartigan had not paid for the videotapes at his register, the sales clerk left the customers he was assisting and informed his manager that "somebody is taking away the tapes in a [trash] can." The sales clerk testified, however, that he did not see Hartigan place the videotapes in the trash can. He also testified that customers could pay for the videotapes at either the electronics department register or the front checkout registers.

As the manager went to the front of the store, he heard an alarm that activates if merchandise with a security tag leaves the store. The manager then went out the front door and saw a man, whom he identified as Hartigan, running across the parking lot and carrying a green trash can. He ran after Hartigan but stopped when Hartigan crossed the street. The manager then returned to the store to call the police.

Matthew Foster saw a man with a trash can walk between two cars in a parking lot across the street from the department store. When the man left that area, he was not carrying the can. Foster retrieved the trash can, saw that it contained videotapes, and called the police. At trial, he identified Hartigan as the man with the trash can.

Karen Baziluik, who was driving near the department store's parking lot, saw the manager running after a man who was carrying a trash can. She lost sight of the man when he crossed the street and ran into an alley. Baziluik drove her car around the block and followed a man who was not carrying a trash can but whom she believed to be the same man. Baziluik continued following the man, lost sight of him again, and then saw him enter a white car. She followed that car until she saw a police vehicle and reported to the police officer what she had seen. When she began to drive away, she again saw the car and followed it to a Toys–R–Us parking lot. There, she obtained the license number of the car and called the police. When she returned to her car, police officers had arrived and detained two men who had been in the car. She identified the passenger to the police officers as the person she saw running with the trash can. At trial, she identified Hartigan as that man.

A police officer testified that he went to the Toys–R–Us parking lot and arrested Hartigan as he was walking away from the white car. While Hartigan was in custody, the police brought the manager and April West, the department store's loss prevention manager, to the parking lot to identify Hartigan.

The jury convicted Hartigan of grand larceny.

## II.

 Hartigan contends the trial judge erred in allowing the Commonwealth to introduce at trial evidence that impermissibly commented on Hartigan's exercise of his constitutional privilege against self-incrimination. This issue arose at trial during the testimony of West, the loss prevention manager.

On direct examination, West testified that she had not witnessed the events in the store. She first saw Hartigan when the police took her to the parking lot where Hartigan was in police custody. Over Hartigan's objection, the trial judge permitted the prosecutor to ask West, "[A]t any point did [Hartigan] show you a receipt for those items?" West responded, "No, he did not."

 The Fifth Amendment to the Constitution of the United States provides that "no person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. Similarly, the Constitution of Virginia provides, in pertinent part, that a person may not "be compelled in any criminal proceeding to give evidence against himself." Va. Const. art. I, § 8. "An individual may assert this privilege whenever the government seeks to compel self-incriminating testimonial or communicative evidence." *Taylor v. Commonwealth,* 26 Va.App. 485, 490, 495 S.E.2d 522, 525 (1998).

 The main purpose behind the Fifth Amendment privilege is to prevent government compulsion of testimonial or communicative evidence. *See Doe v. United States,* 487 U.S. 201, 212, 108 S.Ct. 2341, 2348, 101 L.Ed.2d 184 (1988). Thus, the Fifth Amendment privilege protects a person "against being incriminated by his own compelled testimonial communications," *Fisher v. United States,* 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976), and "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States,* 406 U.S. 441, 445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe,* 487 U.S. at 210, 108 S.Ct. at 2347.

In addition, "the Fifth Amendment privilege against self-incrimination applies to acts that imply assertions of fact." *Id.* at 209, 108 S.Ct. at 2347. "Nonverbal conduct of a person [may be] intended by [that person] as an assertion." *Stevenson v. Commonwealth,* 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977).

In *Taylor,* we held "that the government's interest in using [an accused's] pre-arrest silence in response to a police officer's question as substantive evidence of guilt is substantially outweighed by the burden which such practice imposes on the privilege against self-incrimination." 26 Va.App. at 499, 495 S.E.2d at 529. In *Taylor,* the prosecution sought to have the fact finder infer Taylor's guilt from testimony that Taylor remained silent in response to a question regarding ownership of a gun found at the scene of an accident involving Taylor. *See id.* at 489, 495 S.E.2d at 524. We ruled that the Commonwealth elicited testimony concerning Taylor's silence as a "tacit admission" of his guilt. *Id.* at 496, 495 S.E.2d at 527. We further described this use of Taylor's silence as the equivalent of compelling him to testify and as "tantamount to allowing the Commonwealth to derive an involuntary admission of guilt from the [accused]." *Id.* at 499, 495 S.E.2d at 529.

The Commonwealth introduced evidence that Hartigan had not produced a receipt for the stolen goods when confronted by West, whom the police brought to Hartigan while he was in police custody. The Commonwealth's question sought to prove either conduct that was equivalent to a verbal assertion of fact, i.e., that Hartigan had paid for the items, or the absence of conduct that was equivalent to failure to make the assertion. We hold that the trial judge erred by admitting the evidence because proof that Hartigan did not produce a receipt was equivalent to proving silence in the face of an accusation. That proof impermissibly burdened Hartigan's exercise of his privilege against self-incrimination. The jury clearly could have taken West's testimony as a comment on Hartigan's silence and failure to assert his innocence.

The Commonwealth argues that the privilege was not available because the person who confronted Hartigan was a private citizen. The circumstances clearly established that West's status as a private citizen is irrelevant. The evidence proved that West was taken to Hartigan by the police. Thus, the circumstances surrounding the confrontation clearly proved Hartigan was in police custody. West was asked to comment on Hartigan's conduct in the presence of the police. Hartigan had a constitutional right to choose not to make an assertion without risking that his silence or failure to make an assertion would be used against him. The privilege clearly applies in investigatory settings; it has obviously attached once an accused is in custody. *See Kastigar*, 406 U.S. at 444, 92 S.Ct. at 1656; *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017 (7th Cir.1987) (comparing attachment of Sixth Amendment right to counsel only after a defendant becomes an "accused" with Fifth Amendment mandate that no "person" shall be compelled to provide incriminating evidence against himself).

The Fifth Amendment violation in this case is particularly egregious because Hartigan was in custody when West was brought to the scene. At trial, the Commonwealth sought to have the trier of fact infer Hartigan's guilt from evidence of his silence in the face of an accusation of guilt. It is an abrogation of the right to remain silent if such silence is then used against the accused at trial. This use of Hartigan's silence "cuts down on the [Fifth Amendment] privilege by making its assertion costly." *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).

▇ It was precisely Hartigan's failure to make an assertion while in custody that the Commonwealth used to prejudice him by attempting to create an inference of guilt in the jury's mind. That inference is inherently unreliable because silence at the time of arrest is likely to be ambiguous and thus enjoys only dubious probative value. *See United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136–37, 45 L.Ed.2d 99 (1975). A number of courts have applied *Griffin's* broad

mandate that the Fifth Amendment forbids "comment on the accused's silence" to preclude the substantive use of any silence exercised by the accused. *See, e.g., United States v. Burson,* 952 F.2d 1196, 1200–01 (10th Cir.1991); *Coppola v. Powell,* 878 F.2d 1562, 1567–68 (1st Cir.1989); *State v. Easter,* 130 Wash.2d 228, 922 P.2d 1285, 1290–91 (1996).

■■■ The Commonwealth further argues that the Fifth Amendment privilege was not available because West did not actually ask Hartigan a question. The Commonwealth's evidence proved that when the police brought West to Hartigan, Hartigan did not speak in his own defense or offer a receipt for the tapes. The confrontation took place, however, in the presence of the police; thus, Hartigan had an incentive to remain silent. Further, the Commonwealth did not prove that Hartigan understood he was expected to say something in response to West's presence. *Cf. Baughan v. Commonwealth,* 206 Va. 28, 32, 141 S.E.2d 750, 754 (1965) (holding admissible statements made in the defendant's "presence under such circumstances that he was bound to have heard and understood them"). Hartigan's inaction and silence were the circumstances the Commonwealth sought to prove as the basis for an inference of his guilt.

■■■ Because the trial judge's admission of West's testimony was constitutional error, we must consider whether such error is harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Constitutional error is harmless only if "the beneficiary of the constitutional error ... prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* As the Supreme Court has stated, "[t]he correct inquiry is whether, assuming that the damaging potential of the [evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

The admission of West's testimony was not harmless beyond a reasonable doubt because without West's testimony the

evidence raised a reasonable doubt whether Hartigan had stolen the videotapes. The Commonwealth offered the evidence to raise an inference that Hartigan had failed to pay for the videotapes at the registers located at the front of the store. That inference was critical to the Commonwealth's case because the testimony of the Commonwealth's witnesses contained a significant gap. No one had an uninterrupted view of Hartigan between the time he was in the electronics department and when he was seen outside the store. The store clerk testified that he did not see Hartigan at all times. The final checkout registers were at the front door where Hartigan exited the store and could have paid for the videotapes. Moreover, the Commonwealth's evidence proved that the security alarm will sound "if [the register] employee forgot to take off the tag."

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). We cannot know whether the jury would have found beyond a reasonable doubt "every fact necessary" to convict Hartigan of grand larceny without West's impermissible testimony, which was offered to prove Hartigan had not paid for the videotapes at the front registers. *See id.* Such an error cannot be found harmless beyond a reasonable doubt. *See Mason v. Commonwealth*, 7 Va.App. 339, 349, 373 S.E.2d 603, 608 (1988) (citation omitted).

## III.

In the penalty phase of the trial, Hartigan's counsel proffered a jury instruction that parole had been abolished and objected to the trial judge's denial of the instruction. He argued that in Hartigan's trial, in contrast to cases holding the jury does not have to be informed about parole eligibility, *cf. Mosby v. Commonwealth*, 24 Va.App. 284, 482 S.E.2d 72 (1997), and *Walker v. Commonwealth*, 25 Va.App. 50, 486 S.E.2d 126 (1997), the evidence could lead "to confusion of the jury seeing sentences under a completely different [system]."

He made that assertion because the Commonwealth offered as evidence sentencing orders dating back to a time when parole was available.

The Commonwealth argues Hartigan is raising for the first time on appeal the argument that the jury could have inferred he was released early on previous convictions, thus creating a "false choice" for the jury. We disagree. Counsel's argument informed the trial judge of the basis for his objection. We believe the trial judge unquestionably understood counsel's concern to be that the jury, upon seeing the prior conviction orders, would mistakenly believe parole was available and not give Hartigan a fair and full determination of his sentence.

Over sixty years ago, the Supreme Court set forth the rule in *Coward v. Commonwealth*, 164 Va. 639, 178 S.E. 797 (1935), that juries should be told "to impose the sentence as seemed to them to be just. What might afterwards happen was no concern of theirs." *Id.* at 646, 178 S.E. at 800. The *Coward* rule was established during a time when a statute provided that "a prisoner whose conduct is good is entitled to have deducted from each month during which the sentence runs, fifteen days ... [with the result that] one sentenced to twenty years' confinement would serve only ten years." *Coward*, 164 Va. at 642, 178 S.E. at 798. That circumstance led the Court to rule, as a policy consideration, as follows:

A jury which has been instructed as to this statute might be of opinion that ten years' confinement was just punishment for a proven crime. In order to impose it a twenty year sentence would be necessary. Plainly such a verdict would be indefensible.

*Id.*

Under today's sentencing laws, however, those circumstances are no longer applicable. The General Assembly has mandated that "[a]ny person sentenced to a term of incarceration for a felony offense committed on or after January 1, 1995, shall not be eligible for parole upon that offense." Code § 53.1–165.1. Additionally, in 1994, the General Assembly abolished the former unitary trial scheme in non-capital felony

prosecutions and established a system of bifurcated jury trials. *See* Code § 19.2–295.1. In contrast to the unitary system, in which juries determined guilt and sentencing based only on the facts germane to the offense and the range of punishment available, the jury now is given a much broader range of information under the bifurcated procedure. Of particular significance in this case is the current statutory requirement that in the sentencing phase of the trial "the Commonwealth shall present the defendant's prior criminal convictions." Code § 19.2–295.1. Under the current system, a rule against informing juries about the possibility of parole achieves, in some cases, the result the *Coward* rule was designed to avoid.

Recently, the Supreme Court ruled that "[i]t is manifest that the concern for avoiding situations where juries speculate to the *detriment* of a defendant on post-sentencing procedures and policies of the executive branch of government requires that the *absence* of such procedures or policies *favoring* the defendant be disclosed to the jury." *Yarbrough v. Commonwealth*, 258 Va. 347, 372, 519 S.E.2d 602, 615 (1999). Although the Court limited its decision in *Yarbrough* to the effect of Code § 53.1–165.1 on sentencing in capital murder cases, it acknowledged that "the limitations placed upon the availability of parole by Code §§ 53.1–40.01 and 53.1–165.1 may call into question the continued viability of the *Coward* rule in a non-capital felony case, as where, for example, a defendant subject to a maximum term of years for a specific crime would serve that entire sentence before being eligible for geriatric parole." *Yarbrough*, 258 Va. at 373, 519 S.E.2d at 615.

During the sentencing phase of Hartigan's trial, the Commonwealth introduced evidence of Hartigan's prior record of conviction. Hartigan's criminal record included six felony convictions for which he had been parole eligible. The evidence included the sentencing date and the sentence imposed for each of his convictions. Thus, the jury was presented with the following information: distributing a controlled drug, October 27, 1978, eight years in prison, all suspended; distribution of a controlled drug as an accommodation, December 7, 1979, two years in prison; distributing a controlled drug,

January 25, 1980, eight years in prison with six years suspended; two counts of distributing a controlled drug, October 7, 1983, five years in prison with two years suspended on count I and five years in prison with three years suspended in count II; possession of a controlled drug, February 19, 1988, five years in prison; possession of a controlled drug, November 18, 1992, twelve months in jail.

In three instances, Hartigan was convicted of a subsequent offense before he would have completed the sentence imposed for a previous offense. The presentation of this information may have led the jury to believe that Hartigan would be eligible for parole and, as was the case with his previous convictions, would not serve the full sentence imposed. We believe it is highly likely that Hartigan's jury erroneously speculated on the continuing availability of parole. *See id.*

Hartigan's counsel attempted to remedy this situation by requesting that the trial judge instruct the jury that parole has been abolished in Virginia. The proposed instruction stated: "The court instructs the jury that the parole system in Virginia has been abolished for all offenses occurring on or after January 1, 1995." The trial judge, however, denied Hartigan's request, and the jury sentenced him to a term of eight years in the penitentiary on the charge of grand larceny.

*Mosby* and *Walker* are distinguishable from this case. In *Mosby*, the defense requested an instruction on parole and in spite of the jury's inquiry about the "status of parole in Virginia," the judge refused to give the instruction. 24 Va. App. at 286–87, 482 S.E.2d at 73. In *Walker*, defense counsel simply asked the trial judge to instruct the jury that parole had been abolished. The judge rejected that request. 25 Va.App. at 57, 486 S.E.2d at 130. Hartigan, on the other hand, asked for the instruction to correct the prejudicial effect of the prior sentencing history, which abundantly exposed his early releases on parole. Evidence that the defendants served less than full sentences on previous convictions was not introduced in *Mosby* or *Walker*.

The standard governing our review of a trial judge's decision to refuse a proffered jury instruction is well-settled. "If any credible evidence in the record supports a proffered instruction ..., failure to give the instruction is reversible error." *Boone v. Commonwealth,* 14 Va.App. 130, 132, 415 S.E.2d 250, 251 (1992); *see also Delacruz v. Commonwealth,* 11 Va.App. 335, 338, 398 S.E.2d 103, 105 (1990) (refusing to grant an instruction is reversible error where there is evidence in the record supporting defendant's theory of defense). The trial judge has a responsibility to instruct the jury on the applicable law so as to aid the jury in arriving at a proper verdict. *See Cooper v. Commonwealth,* 2 Va.App. 497, 500, 345 S.E.2d 775, 777 (1986); *see also* 75 Am.Jur.2d *Trial* § 573 (1974). Thus, it is reversible error to fail to instruct the jury on the applicable law when the jury may make findings based on a mistaken belief about the law. *See Martin v. Commonwealth,* 218 Va. 4, 7, 235 S.E.2d 304, 305 (1977) (per curiam). "[T]he appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to [Hartigan]." *Boone,* 14 Va.App. at 131, 415 S.E.2d at 251.

In the sentencing phase, the prosecutor implied in his closing argument to the jury that Hartigan was a threat to the community and, in spite of his previous convictions, had not learned his lesson. He argued that in the past, the courts had said, "Okay, we'll give you a chance, ... to go out and be on probation and the like." Although he never used the word parole, he implied it when he argued as follows:

> But, you'll find out that, since October 27th of 1978, when he was actually convicted of distribution of drugs, and then in 1980, after he came out of his sentence, which he was given what they call eight years at hard labor, *he was then released;* and, by [1979] ... he's guilty of another charge of distribution of a controlled drug as an accommodation.

> Then we go on. By 1980 there's another charge, a new charge of distribution of controlled drugs, which is eight years in the penitentiary.

(Emphasis added). The Commonwealth's attorney obviously wanted the jury to understand that Hartigan had been released early on his previous convictions. Indeed, "[t]he essence of parole is release from prison, before the completion of sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972).

The introduction of Hartigan's previous sentences and the dates of his subsequent convictions combined with the Commonwealth's attorney's closing argument painted a vivid picture of Hartigan as a threat to the community who had routinely been released early. The obvious message to the jury was—over and over again, this man has served only a fraction of his actual sentence and you have the opportunity to ensure that this will not happen again by imposing a long sentence. The jury instruction proffered by Hartigan was necessary to protect his right to a jury that was adequately apprised of the nature of the range of sentences it may impose so that it could impose an appropriate punishment. *Cf. Commonwealth v. Shifflett*, 257 Va. 34, 43, 510 S.E.2d 232, 236 (1999) (noting that "[t]he goal of having an informed jury assess appropriate punishment should be no less essential merely because a noncapital offense is involved").

We hold that when evidence of prior sentences may lead the jury to speculate that parole is still available to the defendant, a trial judge is required to instruct the jury that the defendant, if convicted, will be ineligible for parole. Because the trial court refused the instruction, Hartigan was denied his right to have a fully informed jury determine his sentence.

Accordingly, we reverse the conviction and remand for a new trial.

*Reversed and remanded.*