FRANK, Judge.
Kevin Alexander Connell (appellant) appeals his convictions by a jury of second degree murder and use of a firearm in commission of a murder. On appeal, he contends the trial court erred in: 1) refusing to grant his proffered jury instruction on excusable homicide; 2) refusing to grant either of his proffered jury instructions on imperfect self-defense; and 3) refusing to instruct the jury on the lesser-included offense of voluntary manslaughter in mutual combat. For the reasons that follow, we reverse the convictions.
I. BACKGROUND
In the early morning hours of January 7, 1998, Jon Lord (victim) was shot by appellant in the parking lot of the Hyatt Hotel in Richmond. ■
Judy Wiesler, a witness for the Commonwealth, testified she • met the victim and Jeff Krupnicka on the evening of January 6, 1998 at the Hyatt Hotel in Richmond. Then, Wiesler and the victim rode with Krupnicka to the Playing Field to get something to eat and play pool. At the Playing Field, the three were sitting at a table when appellant sat down at the table. None of the three knew appellant. Appellant made fun of the victim’s pastel-colored tie by saying it looked feminine and made the victim appear gay. Wiesler testified that appellant’s tone was sarcastic and insulting. Appellant then commented in a sarcastic tone that Krupnicka had a Yankee accent and looked homosexual because of the earring in his ear. Wiesler then left the table and went to play pool. A couple of minutes later, Wiesler looked up and saw the victim throw appellant’s pack of cigarettes on the floor. Appellant then walked away from the table and left the Playing Field. Wiesler said that she, the victim, and Krupnicka played pool after appellant left and “blew off’ the incident.
Wiesler further testified that she, the victim, and Krupnicka left the Playing Field at 1:45 a.m. on January 7, 1998, and *433 returned to the parking lot at the Hyatt Hotel. At the Hyatt' Hotel, the victim and Wiesler exited Krupnicka’s vehicle and started walking toward their parked cars. They noticed a four-wheel drive vehicle pull into the parking lot behind Krupnicka’s car. Appellant got out of the four-wheel drive vehicle with a pistol in one hand and a shotgun in the other. Appellant started to walk toward Wiesler, the victim, and Krupnicka, yelling obscenities. Appellant had the pistol pointed down and the shotgun pointed up in the air. Appellant told Wiesler she was not going to get hurt and to walk away because she was not involved. Wiesler walked toward the street and was halfway across the street when she heard a shot. Wiesler testified she turned around and saw the victim holding appellant against the four-wheel drive vehicle. The victim had his hands around appellant’s shirt collar. Appellant was still holding the shotgun. Wiesler heard more shots and started to walk back to the Hyatt parking lot. Appellant and the victim started struggling with each other and fell below Wiesler’s line of sight. After hearing three more shots, Wiesler looked around the corner of a car and saw the victim lying on the ground. • The victim was screaming that he had been shot, and appellant was standing over him with both guns in his hands. Appellant told the victim he was an idiot and he was going to have to take him to the hospital. Krupnicka drove his car up to appellant and hit appellant in the back of his legs, causing appellant to stumble forward. Appellant said Krupnicka was crazy and that Wiesler was an idiot for hanging out with the victim and Krupnicka. Appellant then ran to his car and drove off.
Jeff Krupnicka testified that appellant approached him, the victim, and Wiesler at the Playing Field. Appellant made obscene remarks about the victim’s and Krupnicka’s neckties. Krupnicka testified that he and the victim responded with obscenities. Appellant lit a cigarette while sitting at the table with Krupnicka and the victim. The victim grabbed the cigarette out of appellant’s mouth and threw it. More obscenities were exchanged. Then, appellant tried to light another cigarette. The victim took appellant’s pack of cigarettes, *434 crumpled them, and threw them. Appellant cursed Krupnicka and the victim and walked away.
Krupnicka testified he, the victim, and Wiesler left the Playing Field and returned to the Hyatt. The victim and Wiesler exited his car and he stood in the doorway of his car to say goodbye. At that time, appellant’s vehicle pulled up behind Krupnicka’s car. Krupnicka saw appellant walk toward the victim holding the pistol and the shotgun. As appellant walked, he began talking and lowered the shotgun. Krupnicka heard appellant say, “ ‘I’m going to kill you.’ ” The victim lunged and tried to grab the shotgun. Krupnicka testified he saw the shotgun fire three times as the victim held it. The victim and appellant then started wrestling. Krupnicka returned to his car to call 911. Then, Krupnicka drove up behind appellant and hit him in the back of the legs. Appellant fell forward and then got in his vehicle and drove away.
Appellant testified he was playing pool in the Playing Field, when he first noticed Wiesler, the victim, and Krupnicka loudly having fun at a nearby table. He testified that as he was leaving the Playing Field, he “noticed ... the victim’s [neckjtie and ... actually paid him a compliment on it.” He testified that the victim responded, “I wear this tie to pick up faggots like you.” Appellant said he considered the comment humorously “in the manner [the victim] intended it” and sat at their table at their invitation. He testified that after he introduced himself all three of the group introduced themselves to him. They began a friendly conversation that later led to an argument. Appellant testified he was intimidated and shocked when the victim threatened him. After the victim pushed him, appellant paid his bill and drove home, where he had another alcoholic drink. He then decided that he would “scare the hell out of [the group]” and “get an apology” from them. He retrieved a rifle and a shotgun. A handgun was already in his car. He then returned to the Playing Field.
He waited for Krupnicka, the victim, and Wiesler to leave the Playing Field and he followed them to the Hyatt Hotel *435 parking lot. Appellant parked behind Krupnicka’s car and got out of his vehicle. He was carrying the shotgun and the pistol. Appellant testified he walked to the front of his car and demanded an apology from Krupnicka and the victim. Appellant testified that the victim then began to walk toward him. Appellant told Wiesler to leave, that she was not involved, and he did not want her to get hurt. Appellant testified he warned the victim to stay back. He tucked the pistol in his pants and then pointed the shotgun in the air to fire a warning shot over the victim’s head. Appellant testified he never pointed the shotgun at the victim, did not say he was going to kill the victim, and did not walk toward the victim. The victim continued walking toward appellant and appellant fired a second warning shot and said, “ ‘Stay back.’ ” Appellant realized the victim was not going to stop, so he turned to run and ran into the front of his car. The victim then grabbed appellant and appellant tossed away the shotgun. A struggle ensued between the two men. Appellant testified the victim put him in a headlock that included his left arm. The victim hoisted appellant into the air and told him he was going to kill him. The victim then dragged appellant around the side of appellant’s vehicle. Appellant’s feet were dragging across the ground and he did not have his weight under him. He stated that he “ Vas like a rag doll in [the victim’s] hands.’ ” Appellant stated that it was at this point that he fired the shot into the victim’s side,- which ultimately resulted in the victim’s death. The victim maintained his hold on appellant and appellant shot him in the right thigh. The victim fell to the ground and appellant tried to get away from the victim. Fearing the victim was going to grab the pistol, appellant shot him a third time in the left shoulder. Appellant testified that he told the victim he would not leave him and would get him to the hospital. Appellant fled the scene after Krupnicka tried to run over him with his vehicle.
The jury convicted appellant of second degree murder, a lesser-included offense of the charge of first degree murder.
*436 II. ANALYSIS
A defendant is entitled to have the jury instructed only on those theories of the case that are supported by evidence. Tuggle v. Commonwealth, 228 Va. 493, 508, 323 S.E.2d 539, 548 (1984), vacated on other grounds, 471 U.S. 1096, 105 S.Ct. 2315, 85 L.Ed.2d 835, aff'd on remand, 230 Va. 99, 334 S.E.2d 838 (1985); LeVasseur [v. Commonwealth ], 225 Va. [564,] 590-91, 304 S.E.2d [644,] 658-59 [(1983)]; Linwood Earl Briley v. Commonwealth, 221 Va. 532, 543, 273 S.E.2d 48, 55 (1980), cert. denied, 451 U.S. 1031, 101 S.Ct. 3022, 69 L.Ed.2d 400 (1981). The evidence to support an instruction “must be more than a scintilla.” LeVasseur, 225 Va. at 590, 304 S.E.2d at 658; Hatcher v. Commonwealth, 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978).
Frye v. Commonwealth, 231 Va. 370, 388, 345 S.E.2d 267, 280 (1986).
“[T]he trial court should instruct the jury only on those theories of the case which find support in the evidence.” Morse v. Commonwealth, 17 Va.App. 627, 632-33, 440 S.E.2d 145, 149 (1994). “ If any credible evidence in the record supports a proffered instruction on a lesser included offense, failure to give the instruction is reversible error.’ ‘Such an instruction, however, must be supported by more than a mere scintilla of evidence.’ ” Brandau v. Commonwealth, 16 Va.App. 408, 411, 430 S.E.2d 563, 564 (1993) (citations omitted).
Goodson v. Commonwealth, 22 Va.App. 61, 78, 467 S.E.2d 848, 857 (1996).
“On appeal, when the issue is a refused jury instruction, we view the evidence in the light most favorable to the proponent of the instruction.” Lynn v. Commonwealth, 27 Va.App. 336, 344, 499 S.E.2d 1, 4-5 (1998) (citing Turner v. Commonwealth, 23 Va.App. 270, 275, 476 S.E.2d 504, 507 (1996)), aff'd, 257 Va. 239, 514 S.E.2d 147 (1999). Appellant first contends the trial court erred in failing to give the jury appellant’s proffered instruction on excusable homicide. We agree.
*437 Excusable self-defense may be asserted when the accused, who was at some fault in precipitating the confrontation with the victim, abandons the fight and retreats as far as he or she safely can..... See McCoy v. Commonwealth, 125 Va. 771, 776, 99 S.E. 644, 646 (1919).
Lynn, 27 Va.App. at 350, 499 S.E.2d at 7-8.
Once the accused abandons the attack and retreats as far as he or she safely can, he or she may kill his or her adversary if there is “a reasonably apparent necessity to preserve his [or her] own life or save himself [or herself] from great bodily harm.” Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958).
Appellant’s evidence established he provoked the violence in the hotel parking lot by following the victim, Krupnicka, and Wiesler to that location. He testified that he fired two warning shots over the victim’s head when the victim began to advance toward him. He put the pistol on safety and tucked it into his pants. He also twice warned the victim to stay back. Then, he turned to run and ran into the front of his vehicle, which gave the victim the opportunity to catch him. This testimony established more than a mere scintilla of evidence that appellant retreated as far as possible before the victim apprehended him. At this point, appellant tossed his shotgun away. We believe this testimony established more than a mere scintilla of evidence that appellant abandoned the fight.
The victim was 6'1" tall and weighed over 200 pounds, while appellant is 5'6" tall and weighs 180 pounds. Appellant testified the victim hoisted him into the air and told him he was going to kill him. The victim headlocked appellant and dragged appellant. Appellant testified that the victim again told him he was going to kill him. Appellant said he did not have his weight under him and “was like a rag doll in [the victim’s] hands.” Appellant also testified he was fearful the victim would shoot him with the shotgun. At this point, appellant fired the fatal shot into the victim’s side with the pistol. This evidence provided more than a scintilla of evi *438 dence that appellant killed the victim out of a reasonably apparent necessity to preserve his own life, and was sufficient to support an instruction on excusable homicide. Therefore, we find the trial judge erred in refusing to instruct the jury on excusable homicide. We reverse appellant’s convictions and remand for a new trial if the Commonwealth be so advised.
III.
Appellant next contends the trial court erred in refusing to grant either of appellant’s proffered jury instructions on imperfect self-defense. Appellant argues that the jury should have been instructed on imperfect self-defense because there was more than a scintilla of evidence that he displayed the firearms without an intent to kill or do serious bodily harm and that he shot the victim only because he reasonably feared he would suffer serious bodily harm. We disagree.
Appellant argues the refused instruction would have mitigated the malice necessary for a murder conviction to manslaughter. Appellant cites authority from other states in support of his argument. The cases cited by appellant liken imperfect self-defense to voluntary manslaughter committed in the heat of passion. See People v. Heflin, 434 Mich. 482, 456 N.W.2d 10, 22 n. 22 (1990); State v. Faulkner, 301 Md. 482, 483 A.2d 759, 761 (1984); State v. Sanders, 556 S.W.2d 75, 76 (Mo.Ct.App.1977); Reed v. State, 11 Tex.App. 509, 519 (Tex. Ct.App.1882); State v. Partlow, 90 Mo. 608, 4 S.W. 14 (1887).
In this case, the trial court instructed the jury on the definitions of malice, heat of passion, first degree and second degree murder, and voluntary manslaughter in the heat of passion. The trial court also granted an instruction explaining that malice distinguishes murder from manslaughter.
Appellant also relies upon Hash v. Commonwealth, 88 Va. 172, 13 S.E. 398 (1891), to support his argument that imperfect self-defense is a doctrine recognized by Virginia law. Appellant concedes, however, that Hash is the only Virginia case that discusses “imperfect defense.”
*439 If we interpret the discussion of “imperfect defense” in Hash for the proposition that one can provoke a confrontation and still avail himself or herself of the defense of justifiable homicide, such holding was overruled by Jackson v. Commonwealth, 98 Va. 845, 36 S.E. 487 (1900). However, if we interpret Hash to hold that one may avail himself or herself of “imperfect defense” if he or she provoked an attack without felonious intent, such holding merely is the law of voluntary manslaughter as it currently stands in the Commonwealth. Further, the trial court instructed the jury on voluntary manslaughter, heat of passion, and the distinction between murder and manslaughter. We, therefore, find the trial court did not err in denying appellant’s proffered jury instructions on imperfect self-defense.
IV.
Finally, appellant contends the trial court erred in refusing his request to instruct the jury on the lesser-included offense of voluntary manslaughter by mutual combat. We disagree.
“For combat to be ‘mutual,’ it must have been voluntarily and mutually entered into by both or all parties to the affray.” Lynn, 27 Va.App. at 356, 499 S.E.2d at 10 (citing Smith v. Commonwealth, 17 Va.App. 68, 72, 435 S.E.2d 414, 417 (1993)). “ ‘One who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as a mutual combat.’ ” Smith, 17 Va.App. at 72-73, 435 S.E.2d at 417 (quoting Harper v. Commonwealth, 165 Va. 816, 820, 183 S.E. 171, 173 (1936)).
Appellant’s evidence established that when the victim began walking toward him in the hotel parking lot, appellant warned the victim to stay back, fired two warning shots over the victim’s head, and told the victim, “Stay back.” When it became clear that the victim was still advancing, appellant tried to run away but ran into the front of his car. At that point, the victim grabbed appellant.
*440 The record does not contain a scintilla of evidence that the fight between appellant and the victim was mutual combat. Appellant’s evidence showed that he was attacked by the victim, which, under Smith, does not constitute mutual combat. We, therefore, find the trial court did not err in refusing appellant’s request for a jury instruction on mutual combat.
For these reasons, we affirm the trial court’s refusal to instruct the jury on imperfect self-defense and mutual combat, but we reverse appellant’s convictions based on the trial court’s refusal to instruct the jury on excusable homicide and remand for further proceedings if the Commonwealth be so advised.

Reversed and remanded.