COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Humphreys and McClanahan
Argued at Richmond, Virginia


DARRICK HAMILTON HOOD

                                          MEMORANDUM OPINION* BY
v.        Record No. 2419-02-2          JUDGE ROSEMARIE ANNUNZIATA
                                            JANUARY 28, 2004
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    William R. Shelton, Judge Designate

         John F. McGarvey for appellant.

         Paul C. Galanides, Assistant Attorney General (Jerry W. Kilgore,
         Attorney General, on brief), for appellee.


        Darrick Hamilton Hood appeals his conviction by a jury of aggravated malicious

wounding, illegal use of a firearm, and his conviction in a bench trial of possession of a firearm

by a felon in violation of Code §§ 18.2-51.2, 18.2-53.1, and 18.2-308.2, respectively.  As

grounds, Hood contends the court erred in denying his proffered instructions on unlawful

wounding, on malice, and on his "without fault" self-defense instruction.  He also contends that

the evidence was not sufficient to support his conviction for aggravated malicious wounding and

for possession of a firearm by a convicted felon.  Finding no error, we affirm.

                                    I.  Background

        The record discloses that Hood moved in with Pam Mosby (Pam), the wife of David

Mosby (Mosby), at Pam's residence in Chesterfield County in the spring of 2001.  Mosby was

upset to learn that Hood had moved into Pam's house and called his former residence a number

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of times while in jail to express his feelings, often couched as threats to Hood. Hood testified that Mosby stated he had the keys to the house and that he would kill Hood if he did not leave. Hood also said that Mosby told him he was going to find a person Hood had confronted years earlier and "make sure the [the individual] came up there and killed [Hood]." Mosby also told Hood that he knew of the visitation arrangements Hood had with his son. Hood became concerned about the threats and purchased a gun from someone "off the street," "just for [his] protection." He purchased the gun in August 2001. On September 4, 2001, Mosby telephoned Pam and made further threats against Hood. He told Pam that he would physically harm Hood, saying he would "Rambo" him, "[f]*** him up," "[d]o something to him," and "lullaby" him. The conversation was tape recorded on a machine that Hood had purchased.

On September 5, 2001, Mosby went to Pam's house at approximately 5:30 p.m. to retrieve some polyurethane paint that he had stored there with her permission. He did not notify Pam that he would be coming to the house, and she was not there when he arrived. Dr. Douglas Peoples, a friend of Mosby's who accompanied him to Pam's house, remained in the car and fell asleep while Mosby looked for the polyurethane. After searching for the paint for a few minutes in the back of a truck parked in Pam's backyard, Mosby returned to his car. At that time, Pam arrived and Mosby asked her to help him look for the polyurethane. She entered the house to look for the paint and told Hood that Mosby was outside. When she could not locate the paint, she returned to the door and told Mosby it was not there. Mosby told her he intended to look for the paint outside in a plastic storage can located on the back deck. Pam followed him to the deck. Hood testified that he retrieved his gun as Mosby and Pam walked to the back deck. He said he suspected Mosby was trying to open the sliding back door when he heard a sound. When he saw Dr. Peoples "ducked down" in Mosby's car, he became frightened.

Mosby stepped onto the deck and started to pull trash out of the storage can. Hood came out of the house and asked him "What the f*** [he] was doing around there?" Hood and Mosby began to argue about Mosby's right to be there. After Hood told Mosby that he could not come to the house and "do what you want to do," Mosby stepped off the deck and began grabbing his clothing near the waistband of his pants. Mosby testified that, because his pants were baggy and he had no belt, he was merely trying to raise his pants above his waist. Hood testified he thought Mosby was reaching for something, perhaps a weapon. Mosby assumed a defensive posture, stating that he raised his fists, in which he was carrying a small cell phone.

Pam attempted to physically pull Hood back inside the house and nearly brought him inside when he pushed her away and walked toward Mosby who had returned to the storage can. Mosby began to retreat, moving around the side of the house to return to the driveway. Hood watched as Mosby moved toward the driveway and testified that he observed the butt of a gun under Mosby's shirt. Thinking that Mosby was going to shoot him, Hood drew a pistol from his waist area and fired it one time at Mosby. He said he only intended to fire a warning shot in Mosby's general direction and that he did not intend to hit him. Hood said he "was not even looking" when he fired the gun. Notwithstanding the claim that he saw the butt of a gun in Mosby's possession, Hood admitted that Mosby never actually drew a weapon before Hood shot.

The shot struck Mosby in the face and knocked him to the ground. When he rose, he saw that Hood and Pam had gone inside the house. Mosby fled to his car, drove to Pam's parents' house, and waited for the police and an ambulance. Pam testified that when both she and Hood were in the house after the shooting, she heard Hood threaten to return outside "to finish [Mosby] off." After Hood saw Mosby leave, he took the gun he used to shoot Mosby and threw it in the James River.

Pam testified that Mosby was "walking like towards the car . . . walking off" just before Hood shot him. Pam said that she never heard Mosby threaten Hood's life as they argued, and, although she saw Mosby pull on his shorts, she never saw Mosby with a weapon, or saw him make any gesture indicating that he had a weapon. Dr. Peoples also testified that he did not see Mosby with a weapon.

When Chesterfield County Police Officer J.T. Williams arrived at the residence of Mosby's in-laws, he found Mosby in the kitchen bleeding from his mouth and nose. Williams did not see Mosby with a weapon while he waited with him for an ambulance to arrive, and he found no weapon in Mosby's car.

Dr. Bradley Gregory, a specialist in maxillofacial surgery, described the injuries that Mosby had suffered. Mosby's injuries included the loss of three teeth and damage to his face that would require surgery to re-align facial structures as he healed.

Hood submitted an instruction on unlawful wounding on the theory that Hood acted in the "heat of passion" rather than with malice. Hood also submitted an instruction that distinguished malice from heat of passion. Both were denied. While the court read the instructions to the jury, Hood objected to the "with fault" self-defense instruction and offered a "without fault" self-defense instruction. The court overruled the objection, finding that the "with fault" instruction was supported by the evidence. During jury deliberations, Hood asserted the applicability of the common-law defense of necessity to the charge of possession of a handgun by a convicted felon. The trial court found the claimed defense unsupported by the evidence, noting that Hood possessed the handgun "long before the encounter [with Mosby]."

The jury convicted Hood of aggravated malicious wounding and illegal use of a firearm. The trial court imposed the sentence set by the jury and ordered Hood to serve twenty-seven years for aggravated malicious wounding, three years for use of a firearm in the commission of

an aggravated malicious wounding, and two years for possession of a firearm by a felon. The court ordered the sentences to be served consecutively. This appeal followed.

## I. Hood's Proffered Jury Instructions

### A. Standard of Review

When reviewing a trial judge's decision refusing a proffered jury instruction, "'the appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to [the proponent of the instruction].'" Hartigan v. Commonwealth, 31 Va. App. 243, 257, 522 S.E.2d 406, 412 (1999) (quoting Boone v. Commonwealth, 14 Va. App. 130, 131, 415 S.E.2d 250, 251 (1992)). "[M]ore than a scintilla of evidence is necessary to support a lesser-included offense instruction requested by the defendant." Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998).

### B. The Trial Court Did Not Err by Denying Hood's Instruction on Unlawful Wounding

Hood argues that the evidence supported an instruction addressing acts performed in the heat of passion rather than with malice. The trial court erred, he argues, in denying his instruction on the lesser-included offense of unlawful wounding. We disagree because not a scintilla of evidence in this case supports Hood's contention that he acted in the heat of passion.

Hood testified that he fired "a warning shot" and that he unintentionally struck Mosby. Hood's claim that he shot Mosby accidentally is inconsistent with a claim of heat of passion. See McGhee v. Commonwealth, 219 Va. 560, 564, 248 S.E.2d 808, 811 (1978) (noting that "heat of passion" negates the element of malice and that "accident" negates the element of intent); see also Commonwealth v. Vaughn, 263 Va. 31, 36, 557 S.E.2d 220, 223 (2002) (holding that, where defendant testified he did not intend to shoot his victim, the jury could not conclude that the defendant intended to shoot his victim and merely cause bodily harm).

Hood also presented evidence that he fired the "warning shot" in a deliberate attempt to "buy enough time to get away." Hood's testimony reveals that, at the time of the shooting, he was acting in a deliberate, thoughtful manner, designing a plan of escape. An act reflecting deliberation is inconsistent with an act performed in the heat of passion. "'Malice aforethought'" implies a mind under the sway of reason, whereas 'passion' whilst it does not imply a dethronement of reason, yet is the *furor brevis* which renders a man deaf to the voice of reason . . . ." Hannah v. Commonwealth, 153 Va. 863, 870, 149 S.E. 419, 421 (1929) (citation omitted); see also Graham v. Commonwealth, 31 Va. App. 662, 671, 525 S.E.2d 567, 571 (2000) ("Heat of passion excludes malice when provocation reasonably produces fear that causes one to act on impulse *without conscious reflection*." (emphasis added)).

Finally, we note the absence of any evidence from which the jury could find that Mosby's actions reasonably provoked Hood to act in the heat of passion, such as out of anger or fear. Peeples v. Commonwealth, 30 Va. App. 626, 636, 519 S.E.2d 382, 387 (1999) (stating that provocation must be objectively reasonable). Here, Hood's testimony established that he and Mosby had a profanity-laced verbal argument over Mosby's "right" to be at Pam's home.[1] However, "'[w]ords alone, [though] insulting or contemptuous, are never a sufficient provocation.'" Canipe v. Commonwealth, 25 Va. App. 629, 643, 491 S.E.2d 747, 754 (1997) (quoting Read v. Commonwealth, 63 Va. (22 Gratt) 924, 938 (1872)). Hood's testimony also established that, although he claimed the shooting was in self-defense, Mosby was walking away from him before the shooting. Hood admitted that Mosby had not drawn a weapon at the time Hood shot him. At best, Hood stated that he saw the "butt" of a gun under Mosby's shirt. We

---

[1] To the extent Hood relies on verbal threats Mosby may have made in the period before the date of the incident at issue here, they are irrelevant. See Graham, 31 Va. App at 671-72, 525 S.E.2d at 571 (holding that a heat of passion instruction was not warranted when victim threatened defendant two days earlier).

- 6 -

therefore conclude that not a scintilla of evidence supports Hood's proffered instruction based on acts performed in a heat of passion upon provocation and that the trial court did not erroneously reject it.

C. The Trial Court Did Not Err By Denying Hood's Malice Instruction

Hood argues that the trial court erred in denying his instruction on malice because it "precluded [the jury] from considering the heat of passion scenario." Hood's instruction, which is not part of the trial record, distinguished heat of passion from malice. Because we conclude that no evidence supports a heat of passion instruction, there was no need for one that distinguished heat of passion from malice. We therefore find no error.

D. The Trial Court Did Not Err By Denying Hood's Without-Fault Self-Defense Instruction

Hood objected to the jury instruction defining self-defense where the evidence shows "the defendant was to some degree at fault in provoking or bringing on the difficulty." He contended no evidence supported fault on his part and that the trial court erred in rejecting his "no-fault" instruction. We disagree.

"*Any* form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" Smith v. Commonwealth, 17 Va. App. 68, 71, 435 S.E.2d 414, 416 (1993) (emphasis added). Hood's fault in the fray was established when he armed himself and aggressively confronted Mosby. He ignored Pam's pleas and refused to desist his aggressive conduct, even when Mosby had turned and walked away. Mosby was unarmed and was leaving the scene when Hood shot him. The evidence fails to show that Hood did not contribute to the fray and that he was without fault. The trial court did not err, therefore, by denying his proffered no-fault self-defense instruction. See Connell v. Commonwealth, 34 Va. App. 429, 436, 542 S.E.2d 49, 52 (2001) ("A defendant is entitled to have the jury instructed only on those theories of the case that are supported by the evidence.").

- 7 -

In sum, even viewing the evidence in a light most favorable to Hood, we conclude that not a scintilla of evidence supports his proffered jury instructions. As a result, we find that the trial court properly rejected them.

## II. Sufficiency of the Evidence

Hood contends that the evidence does not support a finding that he acted with malice, a required element of aggravated malicious wounding. We disagree.

### A. Standard of Review

When the sufficiency of the evidence is challenged on appeal, this Court "must view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth." Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003). The Court must therefore "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003) (en banc) (citations omitted). This Court may not disturb the fact finder's verdict unless it is plainly wrong or without evidence to support it. Id.

### B. The Evidence Was Sufficient To Support Hood's Conviction for Aggravated Malicious Wounding

Malice may be implied when "any purposeful, cruel act is committed by one individual against another without any, or without great provocation." Pugh v. Commonwealth, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982). Malice "may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." Hernandez v. Commonwealth, 15 Va. App. 626, 631, 426 S.E.2d 137, 140 (1993). The trier of fact may also infer malice "from conduct likely to cause death or great bodily harm, willfully or purposefully undertaken," Canipe, 25 Va. App. at 642, 491 S.E.2d at 753, and "from the deliberate use of a deadly weapon." Doss v. Commonwealth, 23 Va. App. 679, 686, 479 S.E.2d 92, 96 (1996). In fact,

> [o]ne of the canons of the criminal law is "that a mortal wound given with a deadly weapon, in the previous possession of the slayer, without any or upon very slight provocation, is *prima facie* wilful, deliberate, and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances."

Scott v. Commonwealth, 143 Va. 510, 518, 129 S.E. 360, 363 (1925) (source of internal quotation unknown).

The evidence in this case shows that Mosby went to his wife's house to find some materials he had stored there. Hood armed himself with a handgun and confronted Mosby. He verbally assaulted Mosby, saying "F*** you. You can't just come up here and do what you want to do." When Mosby attempted to leave the property, Hood followed him. He then shot Mosby and fled the scene. Furthermore, the jury was entitled to reject Hood's testimony that the shooting was an accident. See Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). We find that this evidence, viewed in a light most favorable to the Commonwealth, sufficiently supports the jury's determination that Hood acted with malice.

C. The Evidence Was Sufficient To Support The Conviction For Possession Of A Firearm By A Convicted Felon

Hood interposed the common law defense of necessity at trial as a bar to his conviction for possession of a firearm by a convicted felon. The trial court rejected the proffered defense on the ground that Hood "went out and purchased a weapon off the street long before the encounter ever occurred between he and Mr. Mosby."[2] We find the trial court did not err in rejecting this defense, and, consequently, that the evidence was sufficient to sustain Hood's conviction on this charge.

---

[2] Hood's claim that the trial court's reasoning was improper because the indictment charged him with possession of the firearm on September 5, 2001 and not on previous days was not raised before the trial court and is barred on appeal by Rule 5A:18.

"'The essential elements'" of the common law defense of necessity "'include: (1) a reasonable belief that the action was necessary to avoid an imminent threatened harm; (2) a lack of other adequate means to avoid the threatened harm; and (3) a direct causal relationship that may be reasonably anticipated between the action taken and the avoidance of the harm.'" Long v. Commonwealth, 23 Va. App. 537, 542, 478 S.E.2d 324, 326 (1996) (quoting Buckley v. City of Falls Church, 7 Va. App. 32, 33, 371 S.E.2d 827, 827-28 (1988)).

Here, the trial court's determination that Hood possessed the weapon "long before" his encounter with Mosby is supported by Hood's testimony. During his testimony, Hood revealed that he purchased the weapon in August 2001. The encounter with Mosby did not occur until September 5, 2001. Thus, the trial judge could reasonably conclude that the purchase of the gun was not necessary to avoid an imminent harm. Also, no evidence adduced at trial supports a conclusion that Hood lacked "other adequate means to avoid the threatened harm." To the contrary, the evidence establishes, viewed in a light most favorable to the Commonwealth, that Hood did not attempt to end the encounter peacefully and that he shot Mosby unprovoked. No threat presented itself to Hood by an unarmed man who was walking away when he was shot. We therefore find that there is sufficient evidence to sustain the trial court's conviction of Hood on the charge of possession of a firearm by a convicted felon.

For the reasons stated, we affirm Hood's convictions.

Affirmed.