COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges O'Brien and Lorish
Argued at Lexington, Virginia

UNPUBLISHED

KEVIN JOSEPH SCHANDEL

v.      Record No. 0707-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
AUGUST 15, 2023

FROM THE CIRCUIT COURT OF HENRY COUNTY
James J. Reynolds, Judge

Jennifer T. Stanton, Senior Appellate Attorney (Indigent Defense
Commission, on briefs), for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Kevin Joseph Schandel (appellant) was convicted in a bench trial of assault and battery of

a law enforcement officer and sentenced to five years' incarceration with three years suspended.

Appellant argues that the evidence was insufficient to sustain his conviction because "he

committed no overt act or attempt, with force or violence, to do physical injury to the officer."

Alternatively, he argues that the officer "abandoned his status as a law enforcement officer" and

engaged him in "mutual combat."

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the evidence

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

On May 18, 2021, Virginia State Police Trooper Matthew Zola stopped appellant's vehicle and arrested him for driving under the influence. Appellant was "a little irate" with Trooper Zola after the field sobriety tests. Henry County Sheriff's Deputy Isaiah Hairston transported appellant to the magistrate's office for a breath test. During the transport, appellant became angry with Deputy Hairston after "confusing [him] with somebody else."

A video from Deputy Hairston's body-worn camera showed that after arriving at the magistrate's office, appellant was upset and complained to Trooper Zola that Deputy Hairston had verbally harassed him. Appellant also claimed that Deputy Hairston had been at his home recently, called him "white trash," and "threatened to shoot his dog." When Deputy Hairston denied ever having met appellant before, appellant lunged towards him and cursed at him.

Trooper Zola brought appellant into another room to administer a breath test while Deputy Hairston stood in the doorway. Appellant ignored commands to sit down, repeatedly demanded that Deputy Hairston leave, and threatened to "headbutt" the deputy. When appellant stood and threatened to "kick [Deputy Hairston] in his fucking face," Trooper Zola stepped between the men, put his hand on appellant and told him to sit down. Appellant disregarded Trooper Zola's command, moved toward Deputy Hairston again, and said that he would "take a year" for "assaulting an officer."

Although Trooper Zola persuaded appellant to return to his chair, appellant stood again, repeated that Deputy Hairston needed to leave, and threatened to "fuck him up bad." Deputy Hairston left the room, and Trooper Zola closed the door so that he could administer the breath

test. A few minutes later, however, appellant started yelling and "kicking stuff," so Deputy Hairston returned.

Appellant continued to demand that Deputy Hairston "get away from [him]" and referred to Deputy Hairston by a racial epithet. Appellant stood up and "kicked a chair towards" Deputy Hairston. Deputy Hairston repeatedly told appellant to sit down, but appellant ignored the commands and threatened to kick the deputy in the jaw. Deputy Hairston approached appellant, put his hands on appellant's shoulders, and "forced him . . . back down into his chair." Appellant resisted and kneed Deputy Hairston in the groin, screamed at Deputy Hairston to get his "hand off" of him, and tried to bite Deputy Hairston's hand. Deputy Hairston struck appellant's "jaw to prevent [appellant] from biting" his hand. Appellant kicked the breathalyzer and told Deputy Hairston, "next time I see you, you won't wake up."

At the conclusion of the case, the court convicted appellant of assault and battery of a law enforcement officer.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[T]he relevant question [on appeal] is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010). "[W]e do not 'substitute our judgment for that of the trier of fact.'" *Taylor v. Commonwealth*, 61 Va. App. 13, 29 (2012) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)).

I. Overt Act

Appellant argues that the evidence was insufficient to prove that he committed an "overt act or attempt[ed] to do physical injury to Deputy Hairston." He contends that the body-worn camera footage does not support the officers' version of events, and claims that it "shows an absence of any overt act on [appellant's] part to harm Deputy Hairston."

"[I]f any person commits an assault or an assault and battery against another knowing or having reason to know that such other person is . . . a law-enforcement officer . . . engaged in the performance of his public duties . . . such person is guilty of a Class 6 felony." Code § 18.2-57(C). The crime of assault and the crime of battery are independent, common law crimes, "although they are linked in Code § 18.2-57." *Parish v. Commonwealth*, 56 Va. App. 324, 329 (2010).

"To sustain a conviction for assault, the Commonwealth must prove 'an attempt or offer, with force and violence, to do some bodily hurt to another.'" *Id.* (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 468 (2000)). "The attempt or offer . . . 'occurs when an assailant engages in an overt act intended to inflict bodily harm [while he] has the present ability to inflict such harm or engages in an overt act intended to place the victim in fear or apprehension of bodily harm.'" *Id.* (second alteration in original) (quoting *Clark v. Commonwealth*, 279 Va. 636, 641 (2010)). Battery is "the actual infliction of corporal hurt on another that is done willfully or in anger." *Montague v. Commonwealth*, 278 Va. 532, 541 (2009). Thus, "[t]o sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Parish*, 56 Va. App. at 330 (second alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)). "Proof sufficient to establish any one of these theories is sufficient to establish the crime of assault and battery." *Blankenship v. Commonwealth*, 71 Va. App. 608, 620 (2020).

The evidence shows that appellant was belligerent throughout the entire encounter. After arriving at the magistrate's office, appellant repeatedly threatened Deputy Hairston, lunged at

him, and kicked a chair toward him. Both Deputy Hairston and Trooper Zola testified that consistent with his threats, appellant kneed Deputy Hairston in the groin and attempted to bite his hand. *See Montague*, 278 Va. at 541 (affirming a conviction for assault and battery of a law enforcement officer when the defendant tried "to prevent the officers from taking him into custody" by "push[ing]" and "strik[ing] [one officer] in the chest with an elbow"). These overt actions were sufficient for the fact finder to conclude that appellant had committed both an assault and battery.

Appellant acknowledges Deputy Hairston's testimony, but argues that the body-worn camera footage, which was "the best evidence of what actually occurred," did not depict him kneeing Deputy Hairston or attempting to bite his hand.

It is well-established that this Court "owe[s] deference to the trial court's interpretation of all of the evidence, including video evidence that we are able to observe as much as the trial court did." *Lucas v. Commonwealth*, 75 Va. App. 334, 343 (2022) (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). The "fact[]finder . . . views video and other evidence to determine what it believes happened;" on appeal, this Court "view[s] video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational fact[]finder could have viewed it as the trial court did." *Id.* (quoting *Meade*, 74 Va. App. at 806).

Deputy Hairston's body-worn camera provided only an obscure perspective during the portion of the affray when appellant kneed his groin, because it depicted only a limited view of both men's bodies. Indeed, the video neither confirms nor disproves that appellant kneed Deputy Hairston's groin. Instead, it establishes that a scuffle occurred as Deputy Hairston put his hands on appellant's shoulders to maintain control of him by returning him to his chair. Deputy Hairston testified that appellant kneed him in the groin during the scuffle, and Trooper Zola

corroborated that testimony. The court credited the officers' testimony, and "this Court will not disturb the fact finder's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Dalton v. Commonwealth*, 64 Va. App. 512, 526 (2015) (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999)). Deputy Hairston's testimony that appellant kneed him in the groin is not plainly contradicted by the video, and a "rational fact[]finder could have viewed it as the trial court did." *Lucas*, 75 Va. App. at 343 (quoting *Meade*, 74 Va. App. at 806). The video also captured appellant's numerous threats directed toward Deputy Hairston, including threatening to headbutt, kick, and even specifically to "assault" Deputy Hairston. What's more, and contrary to appellant's assertion, the video clearly showed appellant trying to bite Deputy Hairston.

Thus, a rational fact finder could conclude from the officers' testimony and the body-worn camera video that appellant's actions were sufficient to sustain his conviction for assault and battery of a law enforcement officer, and the trial court's judgment was not "plainly wrong or without evidence to support it." *McGowan*, 72 Va. App. at 521 (quoting *Smith*, 296 Va. at 460).

## II. Mutual Combat

Appellant also argues that even if he committed an overt act, his conviction should be reversed because "the doctrine of mutual combat applies." He asserts that Deputy Hairston caused the affray by verbally and physically harassing him. He also maintains that he "retreat[ed] to the wall" during the affray and, being handcuffed, had "no way to defend himself."[1] We disagree.

---

[1] To the extent appellant argues that his actions were excusable self-defense, that argument is barred by Rule 5A:18 as it was not presented to the trial court below. Appellant does not invoke the good cause or ends of justice exceptions to Rule 5A:18 in his opening brief, *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

"For combat to be 'mutual,' it must have been voluntarily and mutually entered into by both or all parties to the affray." *Connell v. Commonwealth*, 34 Va. App. 429, 439 (2001) (quoting *Lynn v. Commonwealth*, 27 Va. App. 336, 356 (1998)). "One who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as a mutual combat." *Id.* (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 72-73 (1993)). "Otherwise, 'every fight would be a mutual combat.'" *Smith*, 17 Va. App. at 73 (quoting *Harper v. Commonwealth*, 165 Va. 816, 820 (1936)).

Viewed in the light most favorable to the Commonwealth, the record shows that appellant kneed Deputy Hairston's groin and tried to bite his hand and Deputy Hairston struck appellant in the jaw to prevent being bitten. From those circumstances, the fact finder could reasonably conclude that Deputy Hairston only acted to defend himself from appellant's physical aggression and did not enter into the altercation voluntarily. *See Lynn*, 27 Va. App. at 356 (rejecting the defendant's mutual combat argument when the "jury could have reasonably concluded" that the victim, who "started fighting with [defendant] after [defendant] struck" him, did not "enter the altercation . . . voluntarily"). Accordingly, the court did not err by rejecting appellant's argument that he and Deputy Hairston had engaged in mutual combat.[2]

CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed*.

---

[2] Relying on a case from the U.S. Navy-Marine Corps Court of Criminal Appeals, appellant also argues that he cannot be guilty of the "greater assault of a law enforcement officer" because Deputy Hairston "abandoned" his "status as a law enforcement officer" and was acting as a civilian. As appellant did not present this argument to the trial court, Rule 5A:18 bars us from considering it for the first time on appeal. Appellant does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and this Court will not consider the exceptions sua sponte. *Edwards*, 41 Va. App. at 761.