COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Malveaux and White
Argued at Norfolk, Virginia


KARNELL R. POUGH, JR.

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 0236-23-1          JUDGE MARY BENNETT MALVEAUX
                                                 MAY 28, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Joel P. Crowe, Judge

Althea L. Mease, Public Defender, for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Karnell R. Pough, Jr. ("appellant") was convicted by a jury of second-degree murder, in

violation of Code § 18.2-32.[1]  On appeal, appellant asserts that the trial court erred by: (1)

denying his motion to strike because the evidence was insufficient to permit a rational fact finder

to reject his claim of self-defense; (2) denying his motion to strike because the evidence was

insufficient to prove malice; (3) denying his motion to suppress evidence obtained during a

warrantless entry of his home; (4) denying his motion to suppress his statements to police; and

(5) refusing one of his proffered jury instructions.  For the following reasons, we affirm the

judgment of the trial court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The jury also convicted appellant of robbery, in violation of Code § 18.2-58, but the
trial court granted appellant's motion to set aside that verdict.

BACKGROUND

On appeal of a criminal conviction, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On the evening of May 6, 2020, appellant called 911 and reported that he was in possession of a stolen automobile and that the automobile's owner was dead and "stored in a nearby trash can." In response, Detective Siniscalchi and Officer Sjoberg of the Portsmouth Police Department went to appellant's home. Both were wearing uniforms and displaying their badges, and had guns visible in their holsters. When they first encountered appellant on the sidewalk in front of his home, they asked if he had any weapons and briefly patted him down. Siniscalchi told appellant to take a deep breath, relax, "sit down," and explain the situation. The officers did not give appellant any *Miranda* warnings at this time.[2]

Appellant told the officers that his father was inside the house but was "unaware of what's going on." Appellant sat on a chair on his porch, with his back against the house, facing the officers. He told the officers that two nights earlier, a man he did not know had "run into" his house in pursuit of appellant's girlfriend, A.G.[3] Appellant "grabbed a knife and started stabbing" the man. He and A.G. put the dead man's body in a trash can and moved the trash can

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Appellant's girlfriend was a minor at the time of these events. We use the minor's initials, rather than her name, to protect her privacy.

across the street, and appellant cleaned bloodstains off the walls. Appellant told the officers that A.G. was no longer in the house.

Siniscalchi handcuffed appellant and put him in his police car. He also verified that there was a body in the trash can. The victim, later identified as Parris Folston, had died from roughly 60 stab wounds, the vast majority of which were in his left side and back.

Immediately after discovering Folston's body, Siniscalchi and additional officers did a protective sweep of appellant's house "just to secure it so there [were] no other people inside." They did not have a search warrant at that point, and they did not ask appellant for consent to search the house. Upon entering the house, Siniscalchi briefly spoke with appellant's father.[4] Officers found A.G. hiding in an upstairs closet.

Early the following morning, police executed a search warrant at appellant's house. They found a knife that had no identifiable fingerprints, but a swab test revealed DNA for which Folston could not be eliminated as a contributor. Police also found a "red substance" on the stairwell, as well as a mop bucket.

That same morning, appellant gave a statement to detectives at the police station; an audio recording of the statement was later entered into evidence and played for the jury. Prior to taking appellant's statement, detectives advised him of his *Miranda* rights and confirmed that he understood them. Appellant told the detectives that, a few nights before at about 10:30 p.m., A.G. had left his house and walked to the store. A.G. texted appellant that a "dude" was "trying to sweet talk her" at the store. When A.G. returned home, she ran through the door, leaving it wide open; Folston, who had followed A.G. in his car, ran into the house close behind her, trying

---

[4] The record is unclear as to whether Siniscalchi obtained appellant's father's consent to search the house. Siniscalchi first testified that both he and another officer asked for the father's permission to search, but later testified that he "didn't ask [the father] anything" and "never testified" that he asked the father for consent to search.

- 3 -

to grab her. Appellant first told police that Folston did not say anything. Later in the interview, he told them that Folston did not say anything to him, but had been "yelling" at A.G. to "come here," accusing her of stealing his "weed."

After entering the house, Folston ran past appellant without looking in his direction. Appellant went into the kitchen and grabbed a knife, because although he did not see anything in Folston's hands, he did not know what Folston "had on him." A.G. ran up the stairs, followed by Folston, and appellant followed directly behind Folston. While appellant and Folston were on the stairs, appellant stabbed Folston. Appellant maintained that he was "trying to stop [Folston] from what he was doing."

Appellant did not initially tell the detectives that he struggled with Folston; he said that Folston "immediately dropped" when appellant started stabbing him and did not get back up. Later in the interview, appellant stated that he was trying to get Folston out of the house but Folston "put up a fight." When police asked him what he meant, appellant told them that he was "tussling" or "wrestling" with Folston.

After disposing of Folston's body in the trash can, appellant kept Folston's car and drove it on the following two days. Eventually, he parked the car around the corner from his house, took a nap, then awoke to find the car gone and two police officers in its spot. At that point, appellant decided to call police and report what had happened. Appellant considered "making up a self-defense story," but ultimately decided not to. He stated that it had been A.G.'s idea to place the body in the trash can.

Appellant was indicted for first-degree murder. Prior to trial, he filed a motion to suppress the statements he made to police during the initial conversation on his front porch. The trial court denied the motion because it did not "feel that the *Miranda* warnings were necessary"

- 4 -

as "the detective was simply trying to find out what happened . . . after [appellant] contacted him and initiated the conversation."

Appellant also filed a motion to suppress evidence "obtained incident to, or ultimately stemming from" the initial warrantless search of his home. The trial court denied the motion.

At trial, after the Commonwealth rested, appellant moved to strike, arguing that the evidence "fail[ed] to support any willful, deliberate, or premeditated killing" and that he had acted in self-defense. The trial court denied the motion.

Appellant proffered a jury instruction ("Jury Instruction A") which read: "[t]he unexplained failure of the prosecution to produce a material witness raises a presumption that the testimony of that witness would have been adverse to the prosecution, and beneficial to the defendant." Appellant argued that because A.G. was incarcerated, it was "within the Commonwealth's peculiar ability" to call her as a witness, and thus its failure to do so should raise a presumption that her testimony would be adverse to it. The trial court refused the instruction. Asserting that it did not have the power to make A.G. incriminate herself, the Commonwealth "agree[d] with the [c]ourt's ruling that it is an inappropriate instruction."[5]

The jury convicted appellant of second-degree murder. Appellant moved to set aside the verdict, and the trial court denied the motion.

This appeal followed.

---

[5] The record indicates that the trial court reviewed the jury instructions in camera and asked the parties to place objections concerning the instructions on the record following its review. As such, the court's reason for rejecting the instruction does not appear in the record.

ANALYSIS

A. Self-Defense

Appellant asserts that the evidence was insufficient to permit a rational fact finder to reject his claim of self-defense.[6]

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)); *see also Hines v. Commonwealth*, 292 Va. 674, 679 (2016) (explaining that upon review of a trial court's rejection of a self-defense claim, "the judgment of the trial court is presumed to be correct and will be reversed only if it is 'plainly wrong or without evidence to support it.'" (quoting Code § 8.01-680)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) (quoting *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted

---

[6] On appeal, appellant also invokes the castle doctrine to justify his use of force. However, he did not make this argument before the trial court. Therefore, this argument is procedurally barred. *See* Rule 5A:18; *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004) ("Pursuant to Rule 5A:18, this Court 'will not consider an argument on appeal [that] was not presented to the trial court.'" (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998))). Although Rule 5A:18 contains exceptions for good cause or to attain the ends of justice, appellant does not raise either exception in reference to his castle doctrine argument, and "we will not invoke [those exceptions] *sua sponte*." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

in self-defense is a question of fact." *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "But 'undisputed facts may establish self-defense as a matter of law,' in which case the trial court should strike the Commonwealth's evidence." *Taylor v. Commonwealth*, 77 Va. App. 149, 171 (2023) (quoting *Lynn v. Commonwealth*, 27 Va. App. 336, 353 (1998)).

"[I]n pleading self-defense, 'a defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Myers v. Commonwealth*, 299 Va. 671, 678 (2021) (quoting *McGhee v. Commonwealth*, 219 Va. 560, 562 (1978)). "To establish a claim of self-defense, a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim. Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident." *Hines*, 292 Va. at 679 (citation omitted). "It is not essential to the right of self-defense that the danger should in fact exist," but "[i]f it reasonably appears to a defendant that the danger exists, he has the right to defend against it to the same extent, and under the same rules, as would obtain in case the danger is real." *McGhee*, 219 Va. at 562.

Even if a defendant establishes that he reasonably feared death or serious bodily harm, "bare fear that a person intends to inflict serious bodily injury on the accused, however well-grounded, unaccompanied by any overt act indicating such intention, will not warrant killing such person." *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977). Rather, "[t]here must [also] be some overt act indicative of imminent danger at the time." *Commonwealth v. Cary*, 271 Va. 87, 99 (2006) (second alteration in original) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). "In the context of a self-defense plea, 'imminent danger' is defined as 'an immediate, real threat to one's safety . . . .'" *Sands*, 262 Va. at 729 (quoting *Black's Law Dictionary* 399 (7th ed. 1999)). Even if a person faces an imminent threat, "[t]he amount of

- 7 -

force used must be reasonable in relation to the harm threatened." *Peeples v. Commonwealth*, 30 Va. App. 626, 635 (1999) (en banc) (quoting *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989)).

Appellant argues that the trial court erred when it denied his motion to strike where the evidence was insufficient to permit a rational fact finder to reject his claim of self-defense and find him guilty. As noted above, it is true that "undisputed facts" sometimes "may establish self-defense as a matter of law." *Lynn*, 27 Va. App. at 353. Here, however, the evidence does not establish, as a matter of law, that appellant acted in self-defense.

Concerning the overt act requirement, the evidence supports the finding that Folston committed no overt act that threatened "imminent danger" to appellant or A.G. at the time of the stabbing.[7] *Cary*, 271 Va. at 99 (quoting *Sands*, 262 Va. at 729). According to appellant, Folston ran through the open front door of his home, chasing after A.G. Appellant followed directly behind Folston going up the stairs and stabbed him primarily in his left side and back, so the fact finder could reasonably infer that Folston was not facing appellant head-on in an act of aggression. Folston did not have anything in his hands, did not say anything to appellant directly, and did not even look in appellant's direction. Appellant told police that he stabbed

---

[7] Appellant relies on *Lienau v. Commonwealth*, 69 Va. App. 254 (2018), to support his argument that "a violent, unwanted entry can constitute an overt act that may reasonably place a party in fear for their [sic] own life." But the issue in *Lienau* was "not whether Lienau acted in self-defense," but "whether there was sufficient credible evidence in the record . . . to support [Lienau]'s right to have the jury instructed on these principles." 69 Va. App. at 266-67. Here, the jury was instructed on both self-defense and defense of others. A defendant is entitled to a jury instruction "on those theories of the case that are supported by [more than a scintilla of] evidence." *Id.* at 265 (alteration in original) (quoting *King v. Commonwealth*, 64 Va. App. 580, 587 (2015) (en banc)). The "more than a scintilla" requirement to support a jury instruction is a lower evidentiary standard than that required to prove self-defense: "sufficient evidence to raise a reasonable doubt" about a person's guilt. *Meade*, 74 Va. App. at 806 (quoting *Hughes*, 39 Va. App. at 464). Additionally, where the victim in *Lineau* effected a "forceful breaking and entering of appellant's home," 69 Va. App. at 276, here, Folston did not use force or violence to enter appellant's home but simply came through the door that A.G. had left open. For these reasons, *Lienau* does not support appellant's self-defense argument.

Folston "to stop him from what he was doing," but did not specify that Folston did anything that threatened imminent danger to appellant.[8]

Appellant contradicted his earlier statement to detectives that Folston "immediately dropped" when appellant started stabbing him and did not get back up. Later in his interview, he stated that he was trying to get Folston out of the house but Folston "put up a fight." When police asked him what he meant, appellant told them that he was "tussling" or "wrestling" with Folston. The fact finder was entitled to believe the former version of the story, which did not include any "tussling" or any indication of Folston committing an overt act, and reject the latter. *See Becker v. Commonwealth*, 64 Va. App. 481, 495 (2015) (noting that the fact finder "was at liberty to discount [the appellant's] self-serving statements as little more than lying to conceal his guilt" (quoting *Armstead v. Commonwealth*, 56 Va. App. 569, 581 (2010))).[9]

Further, appellant's use of a deadly weapon was not "reasonable in relation to the harm threatened." *Peeples*, 30 Va. App. at 635 (quoting *Diffendal*, 8 Va. App. at 421). According to appellant, although Folston did not say anything to him or even look at him, appellant grabbed a knife and stabbed Folston about 60 times. Appellant's reaction was grossly disproportionate in

---

[8] Appellant does not assert on appeal that another affirmative defense, defense of others, justified his actions.

[9] Appellant also told police that he only turned himself in after seeing police where Folston's car had been parked and that he considered "making up" a self-defense story. Appellant's desire to fabricate a self-defense story indicates that he did not find it necessary to defend himself. And viewing this statement together with the other inconsistencies in appellant's story, a reasonable fact finder could conclude that his story was disputed and thus could not support his self-defense theory. *See Rollston v. Commonwealth*, 11 Va. App. 535, 548 (1991) (finding that an appellant's "multiple inconsistent stories" to police and others are "further evidence of his guilt").

light of the harm threatened. Consequently, the evidence was sufficient to permit a rational fact finder to reject appellant's self-defense theory.[10]

## B. Motion to Suppress Evidence

Appellant asserts that the trial court erred in denying his motion to suppress "the evidence that ultimately flowed" from the police's initial warrantless entry into his home.

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that an appellate court must review de novo on appeal." *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008). "In making such a determination, an appellate court must give deference to the factual findings of the circuit court

---

[10] Appellant also contends that the evidence was insufficient to prove malice. At trial, appellant did not argue that the evidence was insufficient to prove the malice required for murder of any degree. He argued only that the evidence did not show the willfulness, deliberation, or premeditation required for first-degree murder. "Making one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)).

While acknowledging that he failed to argue to the trial court in a motion to strike that the evidence was insufficient to prove malice, appellant contends that the issue was preserved because the jury was instructed "with a 'waterfall' instruction that contained the elements of first degree murder, second degree murder, and voluntary manslaughter." However, a challenge to the sufficiency of the evidence is made during a motion to strike, not through a jury instruction. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal *unless an objection was stated with reasonable certainty at the time of the ruling*, except for good cause shown or to enable this Court to attain the ends of justice." (emphasis added)). Appellant failed to make a contemporaneous objection as required under Rule 5A:18.

In addition, appellant invokes the ends of justice exception to Rule 5A:18, "to the extent a more specific objection was required." But the ends of justice exception is "to be used 'sparingly when an error at trial is clear, substantial and material.'" *Merritt v. Commonwealth*, 69 Va. App. 452, 460 (2018) (quoting *Masika v. Commonwealth*, 63 Va. App. 330, 333 (2014)). To invoke the exception, an appellant must "affirmatively show that a miscarriage of justice has occurred." *Id.* (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). To this end, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Redman*, 25 Va. App. at 222. Because appellant has not provided such evidence or pointed to a clear, substantial, material error of the trial court, he has not carried his burden of showing a manifest injustice that merits application of the ends of justice exception. Accordingly, we do not consider this assignment of error.

and give due weight to the inferences drawn from those factual findings," but it "must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Id.*

"As a general rule, 'searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Washington v. Commonwealth*, 60 Va. App. 427, 436 (2012) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)). One exception to the warrant requirement for a search of premises is the "protective sweep." *Williams v. Commonwealth*, 49 Va. App. 439, 448 (2007) (en banc). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). "A protective sweep is reasonable if 'reasonably articulable facts' exist to show that the area searched 'could harbor an individual posing a threat to those on the scene.'" *Williams*, 49 Va. App. at 450 (quoting *United States v. Lawlor*, 406 F.3d 37, 41 (1st Cir. 2005)). "[T]he validity of an entry for a protective sweep without a warrant depends on the reasonableness of the response, *as perceived by police*." *Id.* at 451 (quoting *People v. Cartwright*, 563 N.W.2d 208, 213 (Mich. 1997)). The fact that a protective sweep takes place after a suspect has been arrested, or that the arrest took place outside the home, does not in and of itself render the sweep unreasonable. *Id.* at 449.

As an initial matter, we note that appellant does not specify what evidence should have been suppressed. The only evidence obtained pursuant to the warrantless entry was the discovery of A.G. hiding in the closet. That evidence was introduced at the suppression hearing, but not at trial. And A.G.'s presence was neither disputed nor essential to the guilty verdict.[11]

---

[11] For this reason, even if the trial court erroneously denied appellant's motion to suppress, such error would be harmless because no relevant evidence gathered during the first search was introduced at trial, and thus no fruit of that search could have impacted the jury's verdict. *See Commonwealth v. White*, 293 Va. 411, 421-22 (2017) ("The proper inquiry for constitutional harmless error is 'whether the [factfinder] *would have* returned the same verdict

In any case, here, the protective sweep was justified as a warrantless search under the Fourth Amendment. The warrantless entry was a reasonable response to police perception of possible danger based on appellant's statement that someone else, appellant's father, was inside the home. The fact that appellant indicated his father was not aware of the situation did not automatically negate the threat the father may have posed. Appellant had just informed police that he committed a violent crime in the house and that another person had helped him dispose of the body. It was reasonable for police to secure the premises in case other occupants posed a similar danger. The fact that police detained appellant before entering did not render the sweep unreasonable, because they had reason to believe that the house harbored at least one other person. Thus, the trial court did not err in denying the motion to suppress evidence obtained pursuant to the initial entry.

## C. Motion to Suppress Statements

Next, appellant argues that the trial court erred in denying his motion to suppress the statements he made to police.

When reviewing the denial of a motion to suppress, "the burden is on the appellant to demonstrate reversible error." *Jones v. Commonwealth*, 52 Va. App. 548, 555 (2008). Whether the circumstances of a police interview were such as to require *Miranda* warnings is a mixed question of law and fact that we review de novo, but we "defer to the fact-finder's findings of historical fact unless they are plainly wrong or without evidence to support them." *Spinner v.*

---

absent the error.'" (alteration in original) (quoting *Washington v. Recuenco*, 548 U.S. 212, 221 (2006))). We note further that, even if the first search were improper, and even if A.G. had been called as a witness at trial, the fruit of the poisonous tree doctrine does not necessarily permit suppression of witness testimony. *See, e.g.*, *United States v. Ceccolini*, 435 U.S. 268, 280 (1980) ("The exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object.").

*Commonwealth*, 297 Va. 384, 392 (2019) (quoting *Hicks v. Commonwealth*, 281 Va. 353, 359 (2011)).

The United States Supreme Court has held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination" guaranteed by the Fifth Amendment. *Hasan v. Commonwealth*, 276 Va. 674, 679 (2008) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "The safeguards required by *Miranda* must be afforded to a suspect as soon as the police have restricted his freedom of action to a 'degree associated with formal arrest.'" *Id.* (quoting *Dixon v. Commonwealth*, 270 Va. 34, 39 (2005)). But this requirement "does not extend to non-custodial interrogations; the suspect must be 'both in custody and subjected to interrogation' before police must provide *Miranda* warnings." *Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 41 (2019) (quoting *Watts v. Commonwealth*, 38 Va. App. 206, 214 (2002)).

"The ultimate inquiry into whether an individual is subject to custodial interrogation is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Spinner*, 297 Va. at 392 (quoting *Taylor v. Commonwealth*, No. 1031-14-4, slip op. at 9 (Va. Ct. App. Sept. 13, 2016)). "The determination 'depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" *Harris v. Commonwealth*, 27 Va. App. 554, 564 (1998) (quoting *Stansbury v. California*, 511 U.S. 318, 323 (1994)). Among the factors to consider are whether the suspect was physically restrained, whether firearms were drawn, whether there was physical contact between police and the suspect, whether police told the suspect he or she was free to leave, whether police engaged in other incidents of formal arrest such as booking, and whether more than one officer was present. *Alvarez Saucedo*, 71 Va. App.

at 41. The officers' demeanor during the encounter, the length of the questioning, the nature of the questions asked, and the location of the encounter are also important factors. *Id.* "No single factor is dispositive," *Harris*, 27 Va. App. at 566, and "not all factors may be relevant in a given case," *Wass v. Commonwealth*, 5 Va. App. 27, 33 (1987).

We recognize that "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Alvarez Saucedo*, 71 Va. App. at 41-42 (alteration in original) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 493-95 (1977)). However, "'police officers are not required to administer *Miranda* warnings to everyone whom they question,' and *Miranda* warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" *Harris*, 27 Va. App. at 564 (quoting *Mathiason*, 429 U.S. at 495). Further, "[p]olice officers are free to engage in consensual encounters with citizens." *Malbrough v. Commonwealth*, 275 Va. 163, 169 (2008). "An encounter between a law enforcement officer and a citizen in which the officer merely identifies himself and states that he is conducting [an] . . . investigation, without more, is not a seizure within the meaning of the Fourth Amendment but is, instead, a consensual encounter." *McGee v. Commonwealth*, 25 Va. App. 193, 199 (1997) (en banc). "A consensual encounter is not transformed into a seizure merely by the presence of police officers who are in uniform and armed." *Jones v. Commonwealth*, 279 Va. 521, 528 (2010). Rather, "[t]he consensual encounter becomes a seizure '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Malbrough*, 275 Va. at 169 (second alteration in original) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

Appellant first argues that his statements to the police while on his front porch should have been suppressed because they were the product of custodial interrogation without *Miranda*

- 14 -

warnings. We conclude that appellant was not subject to a custodial interrogation when he made his initial, pre-*Miranda* statements, because his freedom of movement was not restrained to the degree associated with formal arrest. The conversation took place at appellant's home. Although appellant had his back to the wall and was facing the officers, Siniscalchi had invited appellant only to "sit down," and appellant freely chose to sit in this position. There is no evidence that officers were intentionally blocking him. Officers did not physically restrain him until the conversation concluded. Officers had firearms visible, but never drew them. There was brief physical contact when officers patted appellant down for weapons, but it was not prolonged and did not restrict appellant's freedom of movement. The officers' statements and demeanor were calming, not aggressive or forceful. Their questions were not excessively probing, but gathered only the information they needed to respond to the situation, such as the location of Folston's body and whether there was anyone else in the house. Appellant volunteered most of the information with only minimal prompting by police. The entire conversation was only about five minutes in length, and the tone remained casual the whole time. It did not rise to the level of a custodial interrogation.

In support of his argument that this conversation amounted to a custodial interrogation, appellant notes that he was underage at the time of the conversation, there were multiple officers present, the officers never told him that he was free to leave, and they did not question him in his father's presence. Appellant cites no authority indicating that the suspect's age or the presence of a parent are relevant factors in determining whether a suspect was subject to a custodial interrogation.[12] And although "informing a suspect that he is not under arrest is one factor

_____

[12] While a suspect's age is a relevant factor in other contexts, such as the voluntariness of a waiver of *Miranda* rights, *e.g.*, *Keepers v. Commonwealth*, 72 Va. App. 17, 37 (2020), or of a confession, *id.* at 40, "[d]etermining the voluntariness of [an] appellant's statements . . . is a separate inquiry from the issue of custody," *id.* Appellant's assignment of error does not challenge the voluntariness of his confession, so we do not consider that issue. *See Moison v.*

- 15 -

frequently considered to show lack of custody, it is not a talismanic factor." *Wass*, 5 Va. App. at 33 (quoting *Davis v. Allsbrooks*, 778 F.2d 168, 171-72 (4th Cir. 1985)). Police did not tell appellant he was free to leave, but the fact that the conversation took place at his own home gives this factor less weight absent a greater showing of police force. *Cf. id.* at 34-35 (finding that a defendant was in custody in his own home, even when police told him that he was "not under arrest" and "free to go at any time," where police presented an "armed display of manpower . . . suggestive of a military maneuver" consisting of "at least twelve officers, all armed, some of whom were carrying shotguns, arriving in two trucks and a helicopter"). Moreover, appellant summoned police and initiated the conversation himself. The consensual nature of the encounter was not transformed simply because Siniscalchi and Sjoberg arrived in uniform with firearms that remained in their holsters. As such, the trial court correctly found that *Miranda* warnings were not required, and properly admitted appellant's statements to police.

Appellant further argues that the post-*Miranda* statement he gave at the police station should be suppressed, because it was the "natural outflow of the prior statements" he made "without the benefit of *Miranda* warnings." In making this argument, appellant relies on *Missouri v. Seibert*, 542 U.S. 600 (2004). *Seibert* also involved a set of pre- and post-*Miranda* statements. In that case, police questioned the defendant at the police station without *Miranda* warnings, during which time she made incriminating statements. 542 U.S. at 604-05. Police then gave her a 20-minute break, turned on a recorder, gave her *Miranda* warnings and obtained

---

*Commonwealth*, ___ Va. ___, ___ (Oct. 19, 2023) (noting that the language of the assignment of error "cabins the error that [an appellate] Court can consider"). As appellant has not presented authority indicating that his age is relevant to the custody determination, we will not consider that argument here. *See* Rule 5A:20(e) (requiring that an opening brief contain "the argument (*including principles of law and authorities*) relating to each assignment of error" (emphasis added)); *Wilson v. Commonwealth*, 54 Va. App. 631, 638 (2009) ("Unsupported assertions of error 'do not merit appellate consideration.'" (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008))).

a signed waiver of rights from her, and prompted her to repeat her pre-warning statements, which she did. *Id.* at 605. The interrogating officer testified that Seibert's post-warning statement, which was admitted at trial, "was 'largely a repeat of information . . . obtained' prior to the warning" and that he had "made a 'conscious decision'" to withhold the warning as part of an interrogation technique. *Id.* at 605-06 (alteration in original). The United States Supreme Court held that "the second statement, clearly the product of the invalid first statement, should have been suppressed." *Id.* at 606-07 (quoting *State v. Seibert*, 93 S.W.3d 700, 701 (Mo. 2002) (en banc)).

When evaluating a similar fact pattern, "to determine the admissibility of post-warning statements, a court must consider whether 'an interrogator use[d] this deliberate, two-step strategy, predicated upon violating *Miranda* during an extended interview.'" *Keepers v. Commonwealth*, 72 Va. App. 17, 39 (2020) (alteration in original) (quoting *Seibert*, 542 U.S. at 621 (Kennedy, J., concurring)). "[T]he *Seibert* 'deliberateness finding is appropriately reviewed as a factual finding.'" *Secret v. Commonwealth*, 296 Va. 204, 223-24 (2018) (quoting *Kuhne v. Commonwealth*, 61 Va. App. 79, 92 (2012)).

We conclude that appellant's reliance on *Seibert* is misplaced. In *Siebert*, the defendant made both statements at the police station after her arrest, and separated only by a 20-minute break. Because she was clearly subject to a custodial interrogation when she made her first statement, *Miranda* warnings were required. *See Seibert*, 542 U.S. at 617. Here, appellant was not subject to a custodial interrogation when he gave his first statement, so *Miranda* warnings were not required at that time. But the most important distinguishing factor is that here, unlike in *Seibert*, there is no evidence suggesting that police used a deliberate, two-step strategy to obtain appellant's second statement. The trial court found that Siniscalchi "was simply trying to find out what happened" and that *Miranda* warnings were not required as a result. This factual

finding about Siniscalchi's intent does not identify that the detective used a deliberate strategy to avoid giving *Miranda* warnings. We defer to this finding on appeal, as there is no indication that it was plainly wrong. Accordingly, neither *Seibert* nor Virginia caselaw interpreting it require exclusion of either of appellant's statements.

### D. Jury Instruction

Appellant argues that the trial court erred in refusing his proffered Jury Instruction A.

"The trial court's 'broad discretion in giving or denying [jury] instructions requested' is reviewed for an abuse of discretion." *King v. Commonwealth*, 64 Va. App. 580, 586 (2015) (en banc) (quoting *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (en banc)). "When reviewing a trial judge's decision refusing a proffered jury instruction, 'the appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to [the proponent of the instruction].'" *Stevens v. Commonwealth*, 46 Va. App. 234, 247 (2005) (en banc) (alteration in original) (quoting *Hartigan v. Commonwealth*, 31 Va. App. 243, 257 (1999)). Our responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Id.* (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "Jury instructions are properly refused if not supported by more than a scintilla of evidence." *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003).

Appellant's proffered instruction, Jury Instruction A, states that "[t]he unexplained failure of the prosecution to produce a material witness raises a presumption that the testimony of that witness would have been adverse to the prosecution, and beneficial to the defendant."

"The Commonwealth's burden of proof does not include the duty to produce all witnesses possibly having some knowledge of a case." *Schmitt v. Commonwealth*, 262 Va. 127, 145 (2001). Accordingly, it would be "improper" to grant a jury instruction stating that the

- 18 -

Commonwealth's unexplained failure to produce certain witnesses raised a presumption that their testimony would be unfavorable to the Commonwealth. *Id.* "We do not believe a missing-witness presumption instruction has any place in a criminal case. If its use is permitted, both the prosecution and the defense . . . would be required to call all witnesses possibly having some knowledge of the case, even though their testimony might be merely cumulative." *Russell v. Commonwealth*, 216 Va. 833, 836-37 (1976) (discussing whether a trial court may instruct a jury that an adverse presumption "arises from the failure of one or the other of the parties to a criminal proceeding to call a particular witness").

*Russell* and *Schmitt* establish that a missing witness presumption instruction would be improper in a criminal case, regardless of which party it would favor. And Jury Instruction A does not cover any issues raised by the evidence, because the Commonwealth explained its failure to call A.G. when it asserted that it could not make her incriminate herself in court, and because A.G. was not a material witness. Because Jury Instruction A is not a clear statement of the law and is not supported by the evidence, the trial court did not err in rejecting it.[13]

---

[13] Appellant relies on an unpublished decision of this Court, *Slater v. Commonwealth*, No. 1963-12-2 (Va. Ct. App. Nov. 12, 2013), in support of his argument, but *Slater* does not support his position. In the context of a challenge to the sufficiency of the evidence establishing an appellant's identity, and not whether to give a jury instruction, we noted in *Slater* that "[t]he rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the [permissible inference] that the testimony, if produced, would be unfavorable." *Slater*, slip op. at 6 (second alteration in original) (quoting *Graves v. United States*, 150 U.S. 118, 121 (1893)). This Court then held that a fact finder could consider it to be an "incriminating circumstance" that the appellant inexplicably failed to produce evidence supporting his contention that the tools and gloves found on his person were related to his employment and not to a burglary. *Id.* Thus, in *Slater*, we did not create a presumption, but identified a permissible inference. *Slater* did not create a rule of law that a clear and comprehensive jury instruction should include, and accordingly, it does not support appellant's contention that the trial court erred in refusing Jury Instruction A.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*